ORDERED.

Dated: July 22, 2015

Karen S. Jennemann
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| SHERWOOD INVESTMENTS ) | Case No. 6:10-bk-00584-KSJ |
| OVERSEAS LIMITED, INC., ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| | |
| SHERWOOD INVESTMENTS ) | |
| OVERSEAS LIMITED, INC., ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No. 6:10-ap-00158-KSJ |
| ) | |
| THE ROYAL BANK OF SCOTLAND ) | |
| N.V., f/k/a ABN AMRO BANK N.V., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**

Plaintiff, Sherwood Investments Overseas Limited, Inc. ("Sherwood"), seeks imposition of sanctions against the Defendant, The Royal Bank of Scotland N.V. ("RBS"),[1] due to RBS's failure to retain recordings of 31 telephone calls, the substance of which Sherwood alleges is

---

[1] RBS is successor-in-interest to ABN AMRO Bank N.V., and may be referred to as such in the evidentiary filings.

germane to its case.[2] In its response,[3] RBS argues, first, that Sherwood's motion is untimely. Second, RBS argues Sherwood cannot prove the elements of an adverse inference sanction.

Sherwood's claims arise during the three weeks following September 15, 2008. On September 15, 2008, Sherwood agreed to purchase a set of securities from RBS, which required two settlement payments, one of about $950,000 and another of $280,000. Consistent with the parties' prior conduct, RBS prepared "instructions" to send to UBS, a Swiss bank and an approved counterparty Sherwood was required to use to transmit funds. The instructions required Sherwood to make the settlement payment earlier than usual, in one day instead of the typical two or three days after the trade. The instructions were sent to UBS at the end of the day on September 17, 2008, with the settlement payment required from Sherwood's UBS account by close of business on September 18. When Julian Benscher, Sherwood's principal, realized the accelerated payment date and concluded Sherwood did not have the funds to make the payment, he made a number of calls to RBS, starting on September 18, 2008, seeking to extend the payment date.

During the discovery phase of this litigation, Sherwood sought recordings of these calls. Sherwood eventually requested recordings of 52 calls between Benscher and RBS that occurred from September 12 to September 30, 2008.[4] RBS provided Sherwood with recordings for 21 of the requested calls, but was unable to locate an auditory transcript of the remaining 31 recordings due to "mechanical/technical problems."[5] The Court granted Sherwood's earlier motion for sanctions relating to the missing recordings, but only on a preliminary basis, asking RBS to

---

[2] Doc. No. 232.
[3] Doc. No. 234.
[4] Motion to Compel, Doc. No. 95; RBS's Response, Doc. No. 97.
[5] Doc. No. 232 at 6. Of the total 31 unproduced recordings, RBS maintains that due to technical problems, 26 of them were never recorded in the first place or, if recorded, were lost within a few hours of their recording due to mechanical problems. *See* Johnson Decl. I ¶ 3, Doc. No. 124; Johnson Decl. II ¶¶ 5, Doc. No. 151; Johnson Decl. III ¶¶ 4–5, Doc. No. 235. The remaining five were not lost due to the "faulty logger," but simply could not be located after an exhaustive manual review process, outlined by RBS in its employee's declaration. *See* Johnson Decl. II, Doc. No. 151.

further explain efforts expended locating the missing recordings.[6] RBS explained in detail the extraordinary efforts it expended searching for the missing recordings.[7] Finding the explanation more than sufficient to explain the missing recordings, no sanctions were imposed. The lost recordings were never mentioned again until Sherwood's present spoliation motion, made over a year later.

Sherwood now asks the Court to impose sanctions in the form of an adverse inference to be fashioned by the trial judge and for attorney fees incurred bringing the motion.[8] "Spoliation" is the "intentional destruction, mutilation, alteration, or concealment of evidence."[9] Courts fashion sanctions for spoliation in order to deter such conduct and to "prevent unfair prejudice to litigators and to insure the integrity of the judicial process."[10]

As a threshold matter, RBS argues Sherwood's spoliation should be denied because it was filed unjustifiably late, ten months after discovery closed. The Federal Rules of Civil Procedure do not contain an express deadline for filing motions for spoliation sanctions, but courts have fashioned their own considerations, realizing "that there is a particular need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion."[11] Only three of the five factors considered by courts are relevant here: (1) how long after the close of discovery the motion was filed; (2) the "temporal proximity" between the motion for sanctions and motions for summary judgment; and (3) the moving party's explanation for why it did not file the motion earlier.[12]

---

[6] Doc. No. 144.
[7] Doc. No. 151.
[8] Doc. No. 232 at 18.
[9] *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1279 (M.D. Fla. 2009).
[10] *Id.*
[11] *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009).
[12] *Id.* (citations omitted). The remaining two factors, not relevant here, are whether the spoliation motion was made on the eve of trial and whether the court has set a discovery deadline or has a local rule governing timeliness of spoliation motions. *Id.*

Sherwood filed the motion ten months after the close of discovery.[13] Courts have denied spoliation motions as untimely for far shorter delays.[14] As for the second factor, Sherwood filed its spoliation motion *after* RBS filed its motion for summary judgment.[15] Courts view spoliation motions filed near a dispositive motion deadline or in response to a motion for summary judgment with extreme skepticism.[16] An adverse inference as to certain facts—the remedy Sherwood requests—likely would alter an opposing party's approach to summary judgment. Spoliation issues should be broached well in advance of any dispositive motion deadline.[17] Last, Sherwood has not offered any explanation for its delay in waiting over a year from when it discovered the facts upon which its spoliation motion is based before filing it.[18] Sherwood's spoliation motion is untimely.

Sherwood's motion also fails on the merits. To support an award of sanctions for spoliation, Sherwood must prove: (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its *prima facie* case or defense."[19] In addition to those three elements, "[i]n this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when

---

[13] Discovery closed December 20, 2013. Doc. No. 136.
[14] *See, e.g.*, *Olson v. Shawnee Cnty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162, 1199 (D. Kan. 2014) (holding spoliation motion filed eight months after the close of discovery untimely); *Am. Nat. Prop. & Cas. Co. v. Campbell Ins., Inc.*, No. 3:08-CV-00604, 2011 WL 3021399, at *3 (M.D. Tenn. July 22, 2011) (holding motion made four months after close of discovery untimely). *But see McEachron ex rel. McEachron v. Glans*, No. 97-CV-885(LEK/DRH), 1999 WL 33601543, at *2 (N.D.N.Y. June 8, 1999) (holding spoliation motion made within two weeks of close of discovery timely).
[15] *See* Defendant's Motion for Summary Judgment, Doc. No. 209.
[16] *See Olson*, 7 F. Supp. 3d at 1199–1200 (holding spoliation motion untimely because it was made in response to a motion for summary judgment, among other reasons); *Morse Diesel Int'l, Inc. v. United States*, 81 Fed. Cl. 220, 222 (2008) (holding spoliation motion filed after court ruled on motion for summary judgment untimely); *Ferrone v. Onorato*, No. CIV.A. 05-303, 2007 WL 2973684, at *10 (W.D. Pa. Oct. 9, 2007) (holding spoliation motion filed in response to motion for summary judgment untimely) *aff'd*, 298 F. App'x 190 (3d Cir. 2008); *Navedo v. Nalco Chem., Inc.*, 848 F. Supp. 2d 171, 204 (D.P.R. 2012) (holding spoliation motion untimely because, in addition to the other factors, it was filed after summary judgment).
[17] *See Johnson v. Next Day Blinds Corp.*, No. WMN-09-2069, 2012 WL 2871418, at *2 (D. Md. July 11, 2012) (holding spoliation motion filed at the close of discovery, just eight weeks prior to the dispositive motion deadline, untimely).
[18] Sherwood did not file a reply to RBS's untimeliness arguments.
[19] *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010).

the absence of that evidence is predicated on bad faith."[20] "'Mere negligence' in losing or destroying records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'"[21] Bad faith is found in circumstances "such as where a party purposely loses or destroys relevant evidence."[22]

Issues of fact still remain as to whether the evidence ever existed, and as to bad faith. RBS claims that one of its "telephone logger" servers was malfunctioning during one of the relevant periods, September 17, 2008 to September 23, 2008.[23] Due to the nature of the mechanical problems, it is not clear whether the calls either were never recorded by the faulty logger or were temporarily recorded by the logger but lost within a few hours.[24] As for bad faith, the Court has not seen compelling evidence of bad faith, but admittedly resolving this issue could require an evidentiary hearing. At this juncture, the Court is ill suited to weigh this fact-intensive evidence.

The parties' do not dispute that RBS had a duty to preserve the evidence. On October 8, 2008, Sherwood notified RBS to place a litigation hold on all "relevant records, recordings, notes and other documentation."[25] RBS acknowledged their duty to preserve the evidence and went to extraordinary efforts to preserve, to locate, and to restore the 31 missing calls.[26]

Sherwood however still must demonstrate the final element: that the evidence contained in the missing audio recordings is "crucial to its claim."[27] This circuit requires the spoliated evidence to be *crucial*: "[i]t is not enough that the spoliated evidence would have been relevant

---

[20] *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997).
[21] *Id.* (quoting *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)).
[22] *Managed Care*, 736 F. Supp. 2d at 1322.
[23] Johnson Decl. II ¶ 12, Doc. No. 151.
[24] Johnson Dep. 25–26, Apr. 19, 2013, Doc. No. 123.
[25] Doc. No. 232, Ex. A.
[26] *See* Johnson Decl. I ¶ 7, Doc. No. 124 (stating that "over 200 man-hours have been spend searching for these recordings"); Johnson Decl. II, Doc. No. 151 (explaining exhaustive search process used).
[27] *Managed Care*, 736 F. Supp. at 1327.

to a claim or defense."[28] Sherwood must show "it is 'unable to prove [its] underlying action owing to the unavailability of the allegedly spoliated evidence.'"[29] The pivotal question, then, is what evidence does Sherwood believe the recordings contain, and what would it prove? And, more to the point, is it crucial?

Sherwood argues the lost calls would help establish its breach of contract claims because the calls would show (1) Benscher was trying amend the instructions to allow Sherwood to pay the settlement payments late, and (2) did not cancel the trades.[30] This, in theory, would refute one of RBS's arguments: that even *if* the contract's terms were consistent with Sherwood's characterization and required RBS to permit Sherwood to roll its trades, Sherwood breached that supposed agreement first by cancelling the trades, therefore excusing any further performance by RBS.

These points are not dispositive of Sherwood's contract claims. That Benscher may have made additional attempts to amend the settlement instructions is not "crucial." The record already is undisputed that Benscher was "attempting" to amend the settlement instructions.[31] Indeed, Sherwood *succeeded* in obtaining amended instructions to allow it to separate out one settlement payment (Rentech) from the other settlement (Dynamic Basket).[32] Adding more evidence to show Sherwood was trying to get a payment extension is cumulative, at best, and certainly not crucial.

To Sherwood's second point, whether Sherwood affirmatively "cancelled" the rolls or not also is not relevant. Assume the recording says what Sherwood claims it says: that Sherwood did *not* affirmatively "cancel" the trades. The point simply is not probative of anything crucial.

---

[28] *Id.*
[29] *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *27 (S.D. Fla. Apr. 5, 2011) (citations omitted).
[30] Doc. No. 232 at 11.
[31] The Instant Bloomberg messaging transcript from the morning of September 18, 2008, establishes Sherwood was attempting to amend the instructions. Doc. No. 223, Ex. 21.
[32] *See* Doc. No. 223 Ex. 24 at 3; Benscher Aff. ¶ 38, Doc. No. 224-1.

Sherwood's "cancelling" of the rolls was not the material breach that would have excused RBS's further performance, if any such duty existed.

The breach was Sherwood's failure to timely pay to settle the trades. The undisputed facts show that Sherwood failed to fully settle the Dynamic Basket roll within one, two, *or* three days after Benscher approved the trade on September 17, 2008.[33] That is, even giving Sherwood the benefit of the doubt that RBS erred in calling for settlement in one day instead of the usual three days, Sherwood *still* did not pay in full on the third day. Whether or not Sherwood cancelled the Dynamic Basket Roll or the Rentech Roll simply is not relevant to Sherwood's claims, much less crucial.

The facts Sherwood claims the calls establish are not crucial to its claims and are marginally relevant. Sherwood failed, as a matter of law, to show the elements required for it spoliation claim. The motion also is untimely. Sherwood's motion for spoliation sanctions is denied.

###

Bill Spivey, attorney for RBS, is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.

---

[33] Sherwood paid the $279,120 settlement for the Rentech Roll on September 19, 2008, but did not pay the $957,637.80 settlement for the Dynamic Basket Roll until September 25, 2008.